IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00592-WYD

BISETTI'S HOLDINGS, INC.,

    Appellant/Cross-Appellee,

v.

TOM H. CONNOLLY, TRUSTEE OF THE VANUATU BUSINESS TRUST,

    Appellee/Cross-Appellant.

**ORDER**

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Bisetti's Holdings, Inc.'s ("Bisetti's") appeal of the Bankruptcy Court's Order on the Motion to Approve and Compel Payment of Post-Petition Obligations Under Lease of Nonresidential Real Property Pursuant to 11 U.S.C. 365(d)(3) filed on behalf of Bisetti's on July 31, 2007. For the reasons that follow, the decision of the bankruptcy judge is affirmed in part and reversed in part and the case is remanded for proceedings consistent with this opinion.

II.    <u>BACKGROUND</u>[1]

In an agreement made effective as of May 1, 2003, Bisetti's, as landlord, and Ricky Dononvan Van Vleet ("Debtor" or "Van Vleet"), as tenant, became parties to a nonresidential commercial lease ("Commercial Lease"). The Commercial Lease was executed by Debtor in his individual capacity, and a personal guarantee ("Personal

---

[1] Unless otherwise noted, the facts are taken from the Bankruptcy Court's Order.

Guarantee") was executed by Debtor in his individual capacity. At the time the Commercial Lease was executed, Debtor already occupied the Leased Premises and used it to operate various businesses, some incorporated and some as a sole proprietor. One such business, First Financial Centre, Inc. ("FFC Inc.") was one of Debtor's businesses. The name on the leased building occupied by the Debtor and his related business was known as First Financial Centre.

The more notable of the Commercial Lease provisions included the following:

a. An "integration" or "merger" clause providing that the Commercial Lease set forth the entire agreement of the parties and that the Commercial Lease could not be amended or modified except by written agreement. See Section 42 of Commercial Lease.

b. Rent was composed of a base rent, plus a pro rata share of the operating expenses common to the building of which the Lease Premises was a part. See 3A of Commercial Lease.

c. The initial term of the Commercial Lease was for a period of three years commencing on July 1, 2003. See Section 2 of Commercial Lease.

d. Upon expiration of the Commercial Lease, Debtor was to surrender the Lease Premises. See Section 37 of Commercial Lease.

e. If, upon expiration of the Commercial Lease, Debtor remained in possession with Bisettis's Holdings consent, then a month-to-month tenancy would arise, which tenancy would be governed by all the terms and conditions of the Commercial Lease except that relating to its term. See Section 38 of Commercial Lease.

f. If a month-to-month tenancy arose under the Commercial Lease, it was terminable by either party upon thirty days written notice. See Sections 34 and 38 of the Commercial Lease.

g. A requirement that Debtor first request consent in writing, and then obtain Bisetti's Holdings consent in writing, before there could be any assignment of Debtor's interest in the Commercial Lease. See Sections 21 and 34 of Commercial Lease.

  h.  Rent not paid when due was subject to a 10% late charge.

  i.  Interest on rent not paid when due was to accrue interest "at the maximum rate an individual is permitted by law to charge." See Section 26 of Commercial Lease.

  j.  Debtor would be liable for all reasonable attorney's fees and related expenses incurred by Bisetti's Holdings in securing collection of rent or other amounts due under the Commercial Lease.

  Following the expiration of the initial three year term of the Commercial Lease on June 30, 2006, Debtor did not surrender the Leased Premises to Bisetti's. Since, October 2005, and for some period prior, rent under the Commercial Lease had been paid through checks drawn by FFC, Inc. During the relevant time period, the base rent and pro rata share of the operating expenses due each month under the Commercial Lease totaled $4,088.50 ("Monthly Rent"). Payment of the Monthly Rent was not timely made in August, September, and October of 2007.

  On October 11, 2006, Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code. Debtor did not notify Bisetti's that he had filed Chapter 11 bankruptcy nor did he timely list Bisetti's as a creditor in the bankruptcy case. Despite Debtor's failure to make the August, September, and October rent payments, Bisetti's did not act to terminate the lease or file an eviction action to secure possess of the premises or seek damages.

  In correspondence from its counsel to the Debtor, dated January 15, 2007, Bisetti's demanded payment of the Monthly Rent due under the Commercial Lease. Debtor physically vacated the Lease Premises on or about January 31, 2007. Debtor

did not provide the thirty day written notice required under the Commercial Lease.

III.     STANDARD OF REVIEW

"For purposes of standard of review, decisions by trial courts are traditionally divided into three categories, denominated questions of law (reviewable de novo), questions of fact (reviewable for clear error), and matters of discretion, (reviewable for abuse of discretion)." *Pierce v. Underwood*, 487 U.S. 522, 558 (1988); see Fed. R. Bankr. P. 8013; *Fowler Bros. v. Young*, 91 F.3d 1367, 1370 (10th Cir. 1996). The district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. Bankr. R. 8013. Findings of fact may be set aside only if they are clearly erroneous. *In re. Blehm Land & Cattle Co.*, 859 F.2d 137, 138 (10th Cir. 1988). Conclusions of law are subject to *de novo* review. *Id*. Mixed questions of fact and law are reviewed de novo if they involve primarily legal issues and for clear error if they involve primarily factual considerations. *In re Wes Dor Inc.*, 996 F.2d 241 (10th Cir. 1993). Legal conclusions from facts are reviewed *de novo*. *In re Golf Course Builders Leasing, Inc.*, 768 F.2d 1167, 1169 (10th Cir. 1985).

IV.     JURISDICTION

The United States District Court for the District of Colorado has jurisdiction over this appeal. The bankruptcy court's order is a final order subject to appeal under 28 U.S.C. § 158(a)(1).

V.     ANALYSIS

There are several issues before me on appeal:1) Did the Bankruptcy Court commit error by ruling that Bisetti's could not apply a Non-Debtor's post-petition

4

payment towards partial satisfaction of the Debtor's pre-petition Commercial Lease obligations; 2) Did the Bankruptcy Court commit error by denying Bisetti's request for pro-rated rent for February of 2007 because the Debtor vacated the Leased Premises on January 31, 2007; 3) Did the Bankruptcy Court commit error by refusing to allow Bisetti's an award of late fees as provided under the Commercial Lease; 4) Did the Bankruptcy Court commit error by refusing to allow Bisetti's an award of interest as provided for under the Commercial Lease; 5) Did the Bankruptcy Court commit error by refusing to allow Bisetti's an award of attorney's fees as provided for under the Commercial Lease; 6) Did the Bankruptcy Court commit error by directing that payment of the amount awarded to Bisetti's be made pursuant to a confirmed plan.

The Trustee in his cross-appeal raises the following issues: 1)whether the Bankruptcy Court erred when it awarded Bisetti's post-petition rent as a cost of administration of the Debtor's estate, ruling that (a) 11 U.S.C. § 365 applied to the Commercial Lease, (b) Debtor, individually, occupied the leased property post-petition, and (c) retroactive rejection was not applicable.

I will address the issues in the Trustee's cross-appeal first as Bisetti's appeal relates to issues surrounding damages.

    A.    11 U.S.C. § 365

The Trustee argues that by its terms Section 365(d) does not apply in this case as the Commercial Lease expired several months prior to the filing of the debtor's bankruptcy petition. The Trustee asserts that Section 365(d)(3) was intended to provide relief to a landlord who was unable to obtain possession of nonresidential real property

during the time that a debtor-tenant decided whether to assume or reject an unexpired lease. The Trustee further asserts that in a different situation, in which the landlord was not forced to provide current services to a nonpaying tenant, there would be no need to require payments under Section 365(d)(3). The Trustee argues that Bisetti's could have obtained possession of the Commercial Property at any time after the expiration of the lease. The Trustee notes not only did Bisetti's take no action to regain possession of the Property when the lease term ended, Bisetti's took no action to regain possession of the Commercial Property when several months went by and no rent was paid.

     The Trustee also argues that the Bankruptcy Court erred in finding that debtor was a holdover tenant asserting that there is no evidence that debtor, individually, occupied the Commercial Property as a holdover tenant. The Trustee further asserts that even if debtor was a holdover tenant, a holdover tenancy is not a sufficient interest to fall within the protections of Section 365(d)(3). The Trustee cites to *In re W.A.S. Food Service Corp.*, 49 B.R. 969, 972 (Bankr. S.D.N.Y. 1985) and *In re RRS, Inc.*, 7 B.R. 870, 872 (Bankr. M.D. Fla. 1980) for the proposition that the "naked possession" right of a holdover tenant cannot be assumed or assigned under Section 365.

     Bisetti's, in response to the Trustee's arguments, asserts that the Trustee's argument fails to account for the plain language contained in Section 38 of the Commercial Lease. Specifically, Section 38 of the Commercial Lease provided that if the Debtor remained in possession following the expiration of the initial lease term, a month-to-month tenancy resulted with precisely the same terms as those under the Commercial Lease except for that relating to the term of the lease. Bisetti's further

6

asserts that the cases relied upon by the Trustee were properly distinguished by the Bankruptcy Court from the instant case.

I agree that the instant case may be distinguished from *In re W.A.S. Food Service Corp.* and *In re RRS, Inc.* In those cases, the tenants legal rights had been terminated pre-petition, and as such there was no unexpired lease to which the protections of the Bankruptcy Code could apply. In this case, the Commercial Lease was never terminated either legally or otherwise. I find that the terms of the Commercial Lease existed as a month-to-month periodic tenancy as of the date of the filing of the Debtor's bankruptcy and had not expired. The Trustee has failed to provide me with any authority in support of his proposition that Section 365(d)(3) does not apply to a month-to-month periodic tenancy.

B. Debtor in Possession

The Trustee asserts that Bisetti's presented no evidence of the occupancy of the Commercial Property after the expiration of the Commercial Lease. The Trustee argues that all of the evidence supported a conclusion that to the extent the Commercial Property was occupied post-petition it was occupied by FFC, Inc. rather than by Van Vleet as a debtor in possession. As such, the Trustee asserts that the Bankruptcy Court's finding that debtor occupied the Commercial Property individually is clearly erroneous.

The Trustee also asserts that the Bankruptcy Court erred in holding that Van Vleet was a holdover tenant because the Commercial Lease was not properly assigned to FFC, Inc. The Trustee argues that the Bankruptcy Court ignored applicable law,

which holds that anti-assignment provisions may be waived by subsequent conduct. citing e.g. *Werner v. Baker*, 693 P.2d 385, 387 (Colo. Ct. App. 1984). The Trustee asserts that the Bankruptcy Court's reliance on *In re Farley, Inc.*, 152 B.R. 516 is misplaced as *Farley* does not support the conclusion that a lessor who assigns his interest in a lease remains liable on the lease after the expiration of the lease term.

Bisetti's responds by arguing that it is not necessary for a debtor to physically occupy a property in order to be liable for unpaid post-petition rent under 11 U.S.C. § 365(d)(3). Appellant - Cross-Apellee's Reply/Response Brief at 8 (citing *In re Geonex Corp.*, 258 B.R. 336 (Bkrtcy.D.Md. 2001). Bisetti's asserts that there is ample support in the record for the Bankruptcy Court's findings that Debtor continued to occupy the leased premises subsequent to the filing of the Debtor's bankruptcy and for the Bankruptcy Court's findings that the Debtor did not assign his interest under the Commercial Lease.

After careful review of the record, I find that the Bankruptcy Court did not commit a clear error in finding that Van Vleet continued to occupy the Leased Premises subsequent to the filing of the his bankruptcy. See Transcript of Motion to Approve and Compel Payment of Post-Petition Obligations Docket #983, Pages 6 through 15). Further, I find that the Bankruptcy Court committed no error in applying the applicable case law regrading waiver of anti-assignment provisions. First, even if assignment of the Commercial Lease had occurred, I agree with the Bankruptcy Court that the Debtor executed a Personal Guarantee of the obligations of the Commercial Lease which still entitles Bisetti's to the protections afforded by Section 365(d)(3). *See In re Farley*

8

*Incorporated*, 152 B.R. 516. Second, this case may be distinguished from *Werner* where the court found extensive evidence of the lessor's knowledge of a breach of the anti-assignment provision in holding that the lessor had waived the anti-assignment provision by subsequent conduct. No such evidence of Bisetti's knowledge of a "breach of the anti-assignment provision" has been presented on the record in this case. As such, I find that the Bankruptcy Court did not err in holding that Van Vleet occupied the property as a debtor in possession.

      C.      Retroactive Rejection

The Trustee argues that to the extent that the Commercial Lease or a continuation thereof was an obligation of Van Vleet on the petition date, the equities in this case favor retroactive rejection to the petition date. Appellee-Cross Appellant's Brief (citing *In re CCI Wireless, LLC*, 279 B.R. 590 (Bankr. D. Colo. 2002), aff'd, 297 B.R. 133 (D. Colo. 2003)). The Trustee notes that nothing in *CCI Wireless* suggests a limitation on the Bankruptcy Court's equitable powers requiring the Trustee to file a motion to reject in order for the Bankruptcy Court to grant relief.

  I find *CCI Wireless* stands for the proposition that when the principles of equity require, a court may approve the rejection of a nonresidential lease pursuant to 11 U.S.C. § 365(d) retroactive to the filing date of the motion seeking rejection. I further find that *CCI Wireless* does not give the Bankruptcy Court the authority to do as the Trustee requests as such a retroactive order would defeat the purposes of Section 365(d)(3). As such, I find that the Trustee's argument on this point is without merit.

Having found that each of the Trustee's arguments are without merit, I will now

address Bisetti's arguments as to damages.

D. Allocation of Non-Debtor Post-Petition Payment

Bisetti's argues that the Bankruptcy Court erred in ruling that the $6,000.00 paid to Bisetti's post-petition by FFC, Inc. should be applied to reduce the Debtor's post-petition rent obligation.  Bisetti's asserts that the Record on Appeal contains absolutely no evidence whatsoever that the Debtor, or anyone acting on behalf of the Debtor designated that the $6,000.00 paid post-petition by FFC, Inc. be applied in any particular fashion.  Therefore, absent an exception, Bisetti's was free to apply the payment in the manner it saw fit, including towards the payment of all pre-petition rent due for August and part of September.  Bisetti's also argues that the post-petition payment received by Bisetti's did not represent funds which belonged to the Debtor and thus, did not reduce the Debtor's Bankruptcy Estate as FFC, Inc. has been held to be a separate and distinct entity from the Debtor.

The Trustee asserts that 11 U.S.C. § 362(a)(6), the automatic stay provision of the Bankruptcy Code, prevents Bisetti's from applying the post-petition payment to the Debtor's pre-petition obligation.  The Trustee argues that the funds which FFC, Inc. used to pay Bisetti's originated from voidable fraudulent transfers from the Debtor and, as such, constituted unauthorized post-petition transfers.  I note that the Trustee cites to no finding in the record as to whether the funds used were such voidable transfers.  I will not address this argument as this issue is being raised for the first time on appeal.

"It is well established that, generally, a debtor owing more than one debt to a creditor has the right to designate the debt to which a payment shall be applied."

10

*Weston Group, Inc. v. A.B. Hirschfeld Press, Inc.*, 845 P.2d 1162, 1165-1166 (internal citations omitted). Further,

> "[i]f the debtor does not direct how the payment is to be applied, then the creditor generally may apply the payment in any way that the creditor desires. An exception to this latter rule is that if the creditor knows or should know that the payment should be applied in a particular way to protect the interest of a third person, then the creditor must apply the payment in accordance with that interest. If neither the debtor nor the creditor exercises its right to direct application of a payment, the payment is applied by law in order of time to the earliest matured debts."

*Id.* See also *In re Boan*, 313 B.R. 479 (finding such an exception where the creditor know the that the interests of the creditor body must be protected).

In this case, there is no evidence that the Debtor designated how the payment should be applied. Further, there is no evidence that Bisetti's knew or should have known that the payment should be applied in a particular way to protect the interest of a third person. Finally, the interests of the creditor body are not effected by an entity separate and distinct from the Debtor making a payment on the Debtor's pre-petition obligations. I also find that applying the payment to the Debtor's pre-petition obligations is not in violation of the automatic stay as such a payment did not involve the debtor or the property of the estate. See *In re Sowers*, 164 B.R. 256, 259 (Bankr. E.D. Va. 1994) (wherein a judgment was entered pre-petition against the debtor's employer due to the employer's failure to respond to a garnishment summons. The court determined that the creditor's attempt to satisfy the judgment obtained against the employer was not a violation of the automatic stay because "it was the corporate liability which the defendants were trying to collect after the debtor's petition was filed" and not the debt

owed by the debtor).  As such, I find that the Bankruptcy Court erred in ordering that the $6,000.00 paid to Bisetti's post-petition by FFC, Inc. should only be applied to reduce the Debtor's post-petition rent obligation.

E. February Rent

Bisetti's argues that the Bankruptcy Court erred in ruling that Bisetti's was not entitled to pro-rated rent for February of 2007 based upon its finding that Bisetti's obtained possession of the Leased Premises on January 31, 2007.  Bisetti's asserts that the Debtor did not provide the thirty days notice required under the Commercial Lease in order to terminate his month-to-month tenancy.  In response, the Trustee asserts that the pro-ration approach in *In re Furr's Supermarkets, Inc.*, 283 B.R. 60 (10th Cir.BAP 2002) is dicta which is not binding on this Court.

Pursuant to 11 U.S.C. § 365(d)(3), a Trustee is required to timely perform all the obligations of the Debtor under an unexpired lease of nonresidental real property until such time as such lease is assumed or rejected.  Further, pursuant to 11 U.S.C. § 365(d)(4), if a Trustee neither assumes nor rejects an unexpired lease of nonresidential real property, such a lease is deemed rejected as of the date that is 120 days after the Order for Relief.

In this case, at no time was a Motion to Reject the Commercial Lease or a Motion to Assume ever filed by the Debtor or the Trustee.  Additionally, the requirements set forth in 11 U.S.C. 365(d)(3) and (4) require that the Trustee timely perform all obligations under the unexpired lease of nonresidental real property for a period of 120 days after the Order for Relief, which in this case would have been February 8, 2007.

12

Per the Commercial Lease, the Debtor was required to give thirty days notice to terminate his month-to-month tenancy, vacating the premises was not enough to terminate his obligations under the Commercial Lease. As such, I find that Bisetti's is entitled to pro-rated February rent for February of 2007 up to and including February 8, 2007. See *In re Geonex Corp.*, 258 B.R. 336, 342 ("When language as clear as 'all obligation of the debtor . . . under any unexpired lease . . .' is invoked by a landlord, the Bankruptcy Court's only appropriate function is to identify those obligations, as set forth in the lease, and then to enforce them in a means appropriate for that stage of the case and the administration of the estate"). The Bankruptcy Court erred in finding otherwise.

    F.    Late Fees, Interest, and Attorney's Fees

Bisetti's asserts that the Bankruptcy Court erred in holding that 11 U.S.C. § 365(d)(3) "does not, by its terms, provide for the assessment of late fees, interest, or attorney's fees." Bisetti's argues that pursuant to 11 U.S.C. § 365(d)(3), a Trustee is required to timely perform all the obligations of the Debtor under an unexpired lease of nonresidental real property until such time as such lease is assumed or rejected. Therefore, Bisetti's argues, the terms "all the obligations of the Debtor" include late fees, interest, and attorney's fees.

The Trustee asserts that I should narrowly construe the amounts entitled to payment under Section 365(d)(3), because "the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors." *Issac v. Temex Energy, Inc. (In re Amarex, Inc.)*, 853 F.2d 1526, 1530 (10th Cir. 1998). The Trustee argues that such punitive measures are especially inappropriate as applied to

13

an innocent Trustee, who was unaware of the existence of the Commercial Lease and would disproportionately reduce the recoveries to Debtor's innocent creditors. Additionally, the Trustee asserts that a 45% interest rate is an unenforceable penalty that would harm the estate's creditors and should not be imposed.

As to attorney's fees, late fees, and interest, in its own order, in the applicable law section, the Bankruptcy Court held that "the obligations which a trustee is required to perform under 11 U.S.C. 365(d)(3) are not restricted to only the payment of rent, but also includes the payment of late fees, interest, and attorney's fees if provided under the lease." Bankruptcy Court Order at 6 (citing *In re Geonex Corp.*, 258 B.R. 336 (Bankr. D.Md. 2001). The Bankruptcy Court then proceeded to hold later in the same order that Bisetti's was not entitled to attorney's fees, late fees and interest. Here, I find that the Bankruptcy Court erred in denying Bisetti's attorney's fees, late fees, and interest. While I agree with the Trustee that 45% interest rate is extremely high, it is expressly permitted under Colorado law. C.R.S. 5-12-103. Additionally, *In re Hollstorm*, 133 B.R. 535 (Bankr. D. Colo. 1991), which is cited to by both the Bankruptcy Court and the Trustee for the proposition that the Bankruptcy Court may use it equitable powers to modify the interest provision of the lease when the interest rate contracted for is an unenforceable pentaly that would harm the bankruptcy estate, is not on point to this case. The *In re Hollstrom* holding addresses another section of the Bankruptcy Code and related to issues not presented here. Further, the equitable power of the Bankruptcy Court must and can only be exercised within the confines of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207 (1988). Here, the

language of Section 365(d)(3) is clear and the Bankruptcy Court must operate within the confines of the Bankruptcy Code.  The Bankruptcy Court erred in holding otherwise.

G. Timing of Payment

Bisetti's asserts that the Bankruptcy Court erred in directing that the amounts awarded to Bisetti's be paid pursuant to any Plan confirmed in this case.  Bisetti's argues that 11 U.S.C. 365(d)(3) requires that all post-petition obligations arising under a nonresidential lease of real property be performed no later than 60 days after an Order for Relief.  The Trustee, in response, argues that the timing of payment of administrative expense claims is committed to the Bankruptcy Court's discretion.

In *In re Buyer's Club Markets, Inc.*, 115 B.R. 700 (Bankr. D. Colo. 1990), the court adopted the reasoning of *In re Granada, Inc.*, 88 Bankr. 369 (Bankr. Utah 1988) wherein that court concluded that Section 365(d)(3) rent for the first sixty days post-petition "must be paid immediately unless the trustee establishes good cause for withholding payment."  *Id*. at 702.  "Such a claim for immediate payment does not constitute a superpriority, and such payment is subject to recapture by the trustee if there are insufficient funds to pay all other administrative claims."  *Id*.

I find that the Bankruptcy Court erred in delaying performance of these obligations until a Plan is confirmed.  In ths case there has been no evidence to establish good cause for withholding payment.  Absent further evidence by the Trustee to satisfy this standard, immediate payment should be made to Bisetti's of all rent accrued.

VI. <u>CONCLUSION</u>

15

Based on the foregoing, the decision of the bankruptcy judge is affirmed in part and reversed in part and this matter is remanded to the Bankruptcy Court for proceedings consistent with this opinion.

Dated: March 31, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief U. S. District Judge